PATRICK B R E H E N Y, PETITIONER-RESPONDENT, v. COUNTY OF ESSEX AND BANKERS INDEMNITY IN- SURANCE COMPANY, RESPONDENTS-PROSECUTORS.

Submitted January 16, 1945—Decided April 10, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PERSKIE.

For the prosecutors, *Maurice C. Brigadier*.

For the respondent, *David Roskein (John A. Laird,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The basic question for decision in this workmen's compensation case is whether the employee carried the burden of establishing his asserted claim for compensation because of subsequently increased incapacity. *R. S.* 34:15–27.

In the Bureau and in the Essex County Court of Common Pleas the question was resolved in the affirmative; and the judgment, based on the original award in the Bureau of 40%, was increased in the Bureau and in the Pleas to 100% of permanent total incapacity. Our independent appraisal of the proofs, and the law applicable thereto, lead us to the conclusion that the increase was right.

The applicable law is clear. The judgment of March 15th, 1940, determining that petitioner had suffered 40% partial permanent incapacity is *res adjudicata* of the nature and extent of the incapacity at the time of such award. That award must be compared with the condition and ability of the employee at the time the increase was granted in the Bureau on July 14th, 1943. *Breheny* v. *County of Essex,* 21 *N. J. Mis. R.* 253; 33 *Atl. Rep.* (*2d*) 294. In the words of Mr. Justice Case for the Court of Errors and Appeals in *Cirillo* v. *United Engineers and Constructors, Inc.,* 121 *N. J. L.* 511, 514; 3 *Atl. Rep.* (*2d*) 596, we are concerned with two conditions, namely, "one which was and one which is." Comparison is the yardstick of admeasurement. See *Rolino* v. *J. P. Scanlon, Inc.,* 125 *N. J. L.* 227, 228; 15 *Atl. Rep.* (*2d*) 336; *affirmed,* 126 *N. J. L.* 419; 19 *Atl. Rep.* (*2d*) 777.

What was the nature and extent, or condition and ability, of petitioner at the time (March 15th, 1940) of the original award of 40% of total permanent disability?

The determination of facts and rule for judgment disclose

586

that respondent, Patrick Breheny, petitioner below, then about fifty years of age, was employed by the County of Essex as a painter for about six years. While so employed he suffered a coronary thrombosis as the result of the strain or effort which he exerted on May 18th, 1938, when with the aid of fellow employees he was engaged in the act of raising a heavy plank from the floor to the scaffold upon which he was standing, and in hoisting the scaffold. He was confined to bed for about "six weeks," and thereafter "remained at complete rest until November 1st, 1938, when he returned to his employment." Thereafter he did not work on "numerous occasions" because of his heart condition. When he did work, he "confined himself to the lighter duties of his trade, such as mixing paint and doing ground work." Notwithstanding the lighter nature of his work, he continued generally to suffer "body weakness," "occasional pain in the region of his heart," "shortness of breath, especially on exertion or on walking up and down stairs," he tired "easily," and felt more or less exhausted "after the end of his day's work."

The deputy commissioner concluded that the effort exerted by petitioner on March 18th, 1938, "superimposed upon his underlying arteriosclerotic cardiac vascular system, produced a spasm in the coronary artery which resulted in a coronary thrombosis from which he is suffering," that there was causal relation between the petitioner's heart condition and his effort or exertion on May 18th, 1938, hence he suffered an accident which arose out of and in the course of his employment. Accordingly, the deputy commissioner made the stated award of 40% of permanent total disability. From the judgment based upon this award there was no appeal.

What then was the nature and extent of petitioner's incapacity, or condition and ability as a result thereof, at the time when the same deputy commissioner, who made the original award of 40%, increased same to 100% of permanent total disability?

To petitioner's claim petition for increased compensation the County of Essex made the following answers: It specifically answered the first five questions; they are not in

issue. It answered the remaining question as follows: "See 36 and 37;" its answers to those numbered questions are substantially alike. The answers state that respondent's failure to answer the other questions is no waiver of its defenses and is no admission of petitioner's claims and the answers specifically deny that "petitioner's disability has increased since the adjudication" of March 15th, 1940.

The record discloses that on March 5th, 1943, petitioner was examined *de bene esse* before a Supreme Court examiner, in the presence of counsel for the respective parties, in the bedroom of the second floor of petitioner's home. He was then fifty-four or fifty-five years of age. He testified that because his condition had "gotten worse," he was obliged to and did stop all work in June of 1940. Thereafter and until about the middle of December of 1942, he was able to "get around the house and go out in the back yard;" but since that time he has been confined to his bedroom; and that he no longer could lie in his bed because when he did so he would suffer pain, hence he slept in an arm chair. It shall serve no purpose further to detail petitioner's condition. For notwithstanding what appears to have been the narrow issue on the pleadings, namely, the increase *vel non* of petitioner's incapacity, counsel for respondents below conceded that petitioner's incapacity was 100%, and that respondents were not in any position "to dispute anything he [petitioner] said so far as his incapacity for working is concerned."

Hence the deputy commissioner posed the issue thus: "It is a question whether or not the increase of his [petitioner's] disability is due to the natural progresses of a pre-existing disease or due to the aggravation caused by this accident. He is 100% total." On that issue the case was tried. *Cf. Pasquale* v. *Clyde Piece Dye Works, Inc.*, 120 *N. J. L.* 557, 567; 1 *Atl. Rep.* (2d) 45. Here, unlike in *Cirillo* v. *United Engineers and Constructors, Inc., supra,* petitioner did testify that the symptoms which formed the basis of the original award thereafter continued to manifest themselves with increased frequency, pain and further incapacitation. The petitioner was examined at his home, on February 6th, 1943, by his physician (a heart specialist) who took an electrocardiagram

at the time. As a result of that examination and a comparison of the electrocardiagram which he had taken with the one which had been taken of petitioner and which was in evidence on the original hearing resulting in the first award, the physician said (without detailing the many symptoms which he found) that petitioner was "one of the sickest patients [he] had ever examined." Petitioner lived in an "arm chair, a sort of an arm chair existence." The doctor further testified that the petitioner's then condition was in "all reasonable probability due to an accident on May 18th, 1938."

The heart specialists for respondents, save one, testified, in substance, that there was no causal relation between petitioner's incapacity of 100% of total and the accident of May 18th, 1938; and all testified that petitioner's present incapacity was due entirely to the normal retrogressive process of the pre-existing and underlying arterio-sclerotic condition of his heart. Their conclusions were concededly based on the premise that "effort and trauma are not causally related to coronary occlusion," a premise which in their view reflects the opinion of leading authorities on the subject. That premise sounds a familiar but discordant tone; it ignores the construction which we have given to the meaning of a compensable accident under our act, i. e., one which arises out of and in the course of a workman's employment. It is not disputed that the examination of petitioner and the electrocardiagram taken disclose that he originally suffered, *inter alia,* from an "infarction of the posterior wall of his heart;" that such injury "produced a disturbance in his heart muscle" and since that disturbance his heart has not been able "to function normally." And the electrocardiagram lastly taken and used on the hearing on petitioner's claim for increased compensation reveals that the "lesion is still in the posterior wall of the heart and is a progressive thing."

Thus the fact that petitioner's heart was weakened as a result of the accident which he suffered on May 18th, 1938, and the fact that thereafter his heart continued to become progressively weaker, do not deprive petitioner of the benefits of the act, when, as here, it was adjudged on March 15th,

1940, that the accident which he suffered on May 18th, 1938, was one which arose out of and in the course of his employment

That adjudication is *res adjudicata* as to the compensability of the accident (*Bernstein Furniture Co.* v. *Kelly,* 114 *N. J. L.* 500; 177 *Atl. Rep.* 354; *affirmed,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Hentz* v. *Janssen Dairy Corp.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (*2d*) 409; *Swift & Co.* v. *Von Volkum,* 131 *N. J. L.* 83; 34 *Atl. Rep.* (*2d*) 897; *affirmed,* 132 *N. J. L.* 344; 40 *Atl. Rep.* (*2d*) 572), and it is *res adjudicata,* as already observed, as to the nature and extent of petitioner's incapacity, or condition and ability of the petitioner as a result thereof, as of the time of the adjudication. *Cirillo* v. *United Engineers and Constructors, Inc., supra* (at *pp.* 514, 515; *Rotino* v. *J. P. Scanlon Co., supra.* And there is no suggestion of an intervening cause, or of a subsequent industrial mishap which was a contributing cause without which the increased disability would not have occurred. *Cf. Schmidt* v. *Atlantic Refining Co.,* 132 *N. J. L.* 196; 38 *Atl. Rep.* (*2d*) 889.

Petitioner is entitled to the full benefits of the act. So is his employer. *R. S.* 34:15–27 so provides. Its provisions for the review of an award either because of subsequently increased or decreased incapacity are obviously aimed to correct error in the determination of the percentage of disability in the first instance, a process which frequently is not without difficulty and uncertainty.

Present counsel, who did not appear below, in support of his claim that petitioner failed to carry the burden of proof, argues here for the first time that inasmuch as petitioner did not produce the doctors who testified in his behalf on the original award, and one who treated him after the award, the absence of such witnesses without any explanation justifies the inference that their testimony would not have been favorable to petitioner. *Cf. DePasquale* v. *Contalvi,* 126 *N. J. L.* 136, 138; 18 *Atl. Rep.* (*2d*) 840. The absence of some of these witnesses is not altogether without explanation. But at all events, that point was not raised below and is not of the class which may be properly raised here for the first time.

In fine, we find, in fact and law, that petitioner has properly carried the burden of establishing his asserted right to compensation for subsequently increased incapacity.

*Caveat.* For the proper naming of the parties and the character in which they appear see Supreme Court rule number 15.

The writ is dismissed, with costs.